**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

UNITED STATES OF AMERICA    :
                           :
                           :    Case no. 2:11-cr-22-4
        v.                 :
                           :
DESMEL COOPER,            :
                           :
              Defendant.    :

## Memorandum Opinion and Order:
## Defendant's Motion to Suppress Evidence

Defendant Desmel Cooper is charged with conspiracy to
distribute heroin and cocaine under 21 U.S.C. §§ 846, 841(a)(1)
and 841(b)(1)(B). Indictment 2, ECF No. 23. Defendant filed a
motion to suppress evidence of his proximity to currency seized
during the search of Room 305 at the Colchester Days Inn
pursuant to an issued search warrant. Mot. to Suppress 1, ECF
No. 280. For the reasons described below, the Court denies his
motion to suppress.

## I. Statement of the Facts

*A. The Investigation*

In his January 27, 2011 supporting affidavit for the
issuance of a search warrant, Detective Daniel Merchand of the
Burlington Police Department provided the following facts
relating to his investigation. Mot. to Suppress Ex. B, ECF No.
280. In December 2010, Det. Merchand began receiving information

regarding a group of four or five males from New York believed to be selling crack cocaine and heroin in and around Burlington, Vermont. Mot. to Suppress Ex. B at 2-3. The information provided to Det. Merchand led him to believe these individuals were utilizing local residences as locations to distribute narcotics, and that these same individuals were carrying firearms during their drug transactions. Det. Merchand was able to receive confirmation of the purchase of a specific firearm, an SR .40 caliber S&W Ruger handgun, by a known associate of this group. Mot. Ex. B at 3.

A criminal informant ("CI") assisted Det. Merchand by conducting several controlled purchases of crack cocaine and heroin from two members of this group, later identified by law enforcement as Shondell Corbitt and Isiah Smith. Mot. Ex. B at 3. In addition, CI identified Cooper as an associate of the same group of individuals through a booking photograph obtained from the New York City Police Department. Mot. Ex. B at 3.

On January 24, 2011, Judge James Crucitti granted Det. Merchand a search warrant to attach GPS devices to any vehicle being operated or utilized by Corbitt, Smith, or Cooper. Through GPS monitoring, Det. Merchand observed these vehicles making frequent trips to the Days Inn Motel in Colchester, Vermont. Mot. Ex. B at 3.  In conjunction with the Colchester Police Department, Det. Merchand obtained a list of current guests from

the Days Inn, and he identified one individual known to have previous narcotics involvement, Jennifer Unangst. Mot. Ex. B at 3-4.

On January 26, 2011, while continuing surveillance of the cars, Det. Merchand identified a male believed to be Cooper enter one of the vehicles along with Unangst. When Unangst drove the car and parked illegally outside a residence in Burlington, Det. Merchand requested a nearby police officer address the parking issue in order to identify the occupants of the vehicle. The driver identified herself as Ms. Unangst, while the passenger told the police officer he was Jamel Cooper.[1] Unangst was issued a parking violation. According to surveillance, her vehicle then returned to the Days Inn. Based upon the same prior booking photograph, the officer who issued the parking citation was later able to identify the individual who presented himself as Jamel Cooper as the Defendant. Mot. Ex. B at 4.

On January 27, 2011, Colchester Police Detective Fish spoke with an employee at the Days Inn regarding the room booked by Unangst. The employee confirmed that Unangst had since checked out, but examination of the list of current guests by Det. Merchand showed that Shondell Corbitt had rented Room 305 at the Days Inn that same day. A few hours later, the Days Inn

---

[1] While no record was found for Jamel Cooper, the date of birth given by Mr. Cooper matched the date of birth of Defendant Desmel Cooper.

contacted Det. Fish to inform him there had been frequent visitors going to and from the room Corbitt was staying in. The Days Inn provided police with the room across from 305 for surveillance purposes. Mot. Ex. B at 4.

That afternoon, Det. Merchand met with CI, who then contacted Corbitt regarding purchasing narcotics. Corbitt advised CI that he had heroin available, and instructed CI to come to the Colchester Days Inn to make a purchase. Mot. Ex. B at 4. Officers equipped CI with an audio transmitter in order to record the transaction. Under continuous surveillance by undercover officers and officers located in the room opposite 305, law enforcement heard CI meet with a male shortly after an African American man in a white shirt and red baseball cap was observed by the officers exiting Room 305. Mot. Ex. B at 4-5. After successfully completing the transaction, CI informed police the seller was an African American male in his early twenties, and described him wearing the same clothing as the man seen exiting Room 305. After CI left, the same African American male was observed by surveillance meeting with another individual in the hallway of the Days Inn, and subsequently entering Room 311. Mot. Ex. B at 4-5.

*B. The Search Warrant*

Later that day, based upon information collected from the investigation, Det. Merchand applied for a search warrant for

4

Rooms 305 and 311. Judge Linda Levitt granted this request. Mot. to Suppress Ex. A at 1. Det. Merchand stated in the search warrant affidavit that he believed this group carried firearms during their drug transactions, and that he had knowledge of the purchase of a firearm by an associate of the group. Mot. Ex. B at 3.   Due to this knowledge, Det. Merchand requested and received a "no knock exception" allowing police to enter the premises without knocking on the door and announcing their presence. Mot. Ex. A at 1. At approximately 8:05 pm, agents broke down the door of Room 305. Cooper was found in the upstairs of the two-story room with $2790 hidden in his "groin area" and a pillowcase containing $3660 near his person, $40 of which was identified as being used by a confidential informant to purchase narcotics two days earlier. Mot. to Suppress at 1-2; Resp. in Opp'n to Mot. to Suppress at 3, ECF No. 291. An individual identified as Vincent Gore was found in the lower level of the room in the proximity of an additional $2301 in cash. Resp. in Opp'n to Mot. to Suppress at 4. Along with the money, law enforcement seized several telephones and Western Union receipts from the hotel room, but no drugs were found. Mot. to Suppress 2. Cooper was indicted along with thirteen other individuals on May 12, 2011 for conspiracy to distribute heroin and twenty-eight grams or more of cocaine base.

## II. Discussion

Cooper argues that Judge Levitt was not provided with adequate information to grant the 'no knock' provision within the search warrant, and as such the resulting search was in violation of his rights under the Fourth Amendment of the United States Constitution and 18 U.S.C. § 3109. Cooper then asserts that because his rights were violated, evidence of his proximity within the room to the seized currency should be suppressed. In addition, he argues that Det. Merchand could not rely in good faith on the issued warrant as Cooper claims the detective knowingly withheld information in his search warrant affidavit.

*A. Application of the Exclusionary Rule*

The Fourth Amendment and common law generally require that police officers knock on the door and announce their identity and purpose before forcibly entering a dwelling. <u>Wilson v. Arkansas</u>, 514 U.S. 927, 934 (1995). Additionally, 18 U.S.C. § 3109 provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in execution of the warrant.

18 U.S.C. § 3109 and the 'knock and announce' rule "share the same common law roots, overlap in scope, and protect the same interests." <u>United States v. Acosta</u>, 502 F.3d 54, 57 (2d

Cir. 2007). It is well established that a violation of the Fourth Amendment 'knock and announce' rule or 18 U.S.C. § 3109 does not result in suppression of evidence obtained in the ensuing search. <u>Hudson v. Michigan</u>, 547 U.S. 586, 594 (2006); <u>Acosta</u>, 502 F.3d at 59. In <u>Acosta</u>, the Second Circuit held that due to the shared roots of both 'knock and announce' and § 3109, "a claim by a defendant that federal officers violated the 'knock and announce' rule under either the Fourth Amendment or 18 U.S.C. § 3109 cannot form the basis for suppression of the evidence obtained in the ensuing search." 502 F.3d at 61. In reaching this holding the Second Circuit relied upon <u>Hudson</u>, where the Court reasoned that, regardless of a violation of 'knock and announce', police still would have executed the search warrant they had previously obtained, and the "illegal manner of the entry was not a but-for cause of obtaining the evidence." 547 U.S. at 592.

The Court also noted that application of the exclusionary rule to violations of 'knock and announce' would "generate a constant flood of alleged failures to observe the rule," cause police officers to wait for an extended period of time before entering, and force courts to second guess law enforcement on what constitutes reasonable wait time. <u>Id.</u> at 594-95.

Cooper concedes that <u>Hudson</u> and <u>Acosta</u> prevent the suppression of the seized currency. Instead, he argues that

evidence of his *proximity* to the money at the time police officers forcibly entered Room 305 does not fall under <u>Hudson</u> or <u>Acosta</u>, as his location was the direct result of the failure of law enforcement to knock on the door and announce their presence. Thus, Cooper requests that all evidence of his proximity to the cash at the time of the officers' entry be suppressed.

Both the Supreme Court and the Second Circuit have clearly stated that the exclusionary rule does not apply to any evidence seized as the result of a violation of either the Fourth Amendment 'knock and announce' rule or 18 U.S.C. § 3109. <u>Hudson</u>, 547 U.S. at 594; <u>Acosta</u>, 502 F.3d at 61. Cooper's proximity to the seized money is evidence in itself, and as a result falls under the rule established by these cases. His argument regarding causation is irrelevant, as any evidence obtained subsequent to an alleged 'knock and announce' violation, whether it be the seized money or Cooper's proximity to that money, cannot be suppressed under the exclusionary rule.

*B. Exigent Circumstances Sufficient for 'no knock' Search Warrant*

Even if the exclusionary rule did apply, the Court finds that Det. Merchand's affidavit provided Judge Levitt with adequate information to determine the existence of exigent circumstances sufficient to grant the 'no knock' search warrant.

In order to conduct a no-knock entry, "police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime, by, for example, allowing the destruction of evidence." Richards v. Wisconsin, 520 U.S. 385, 394 (1997). When, in advance, an officer applying for a search warrant presents "reasonable grounds to expect futility or to suspect that one or another such exigency already exists or will arise instantly upon knocking, a magistrate judge is acting within the Constitution to authorize a 'no-knock' entry." United States v. Banks, 540 U.S. 31, 36 (2003). Among important factors to consider in determining the existence of exigent circumstances, the Second Circuit has looked to an officer's reasonable belief that targets of an investigation are armed. United States v. Brown, 52 F.3d 415, 421 (2d Cir. 1995). While the Court in Richards was dealing with reasonable suspicion at the time of execution of a search warrant, the Second Circuit has used exigent circumstances as defined by Richards in justifying the issuance of a 'no knock' search warrant. 520 U.S. at 394; United States v. Tisdale, 195 F.3d 70, 72-73 (2d Cir. 1999).

Det. Merchand swore in his affidavit he had reason to believe that Cooper's associates utilized firearms during their drug transactions, and knew of a specific purchase of a firearm

by a member of his group.  This information led Det. Merchand to request a 'no knock' search warrant, as he believed that it may be dangerous for officers to announce their presence prior to entry.  Judge Levitt correctly relied upon Det. Merchand's sworn knowledge in granting the search warrant, as based on the information provided exigent circumstances under Richards and Brown were present.

*C. Good Faith Reliance on Search Warrant*

Cooper argues that law enforcement officers were not able to rely in good faith on the issued search warrant, asserting that Det. Merchand "intentionally crafted [the search warrant affidavit] to withhold information while encouraging an inference of armed danger." Mot. to Suppress 3.

The exclusionary rule is inapplicable to evidence seized by police under a warrant that is later deemed defective. United States v. Leon, 468 U.S. 897, 918-21 (1984). However, suppression "remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Id. at 923 (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)). In the case at hand, Cooper has not asserted a Franks argument that would require him to prove by a preponderance of the evidence that statements in the search warrant affidavit were

false or made with a reckless disregard for the truth. <u>Id.</u> at 156. Since he has not made this argument, there is no evidence to suggest Det. Merchand omitted or misrepresented facts in his affidavit.  He therefore could reasonably and in good faith rely upon Judge Levitt's order.  Therefore, <u>Leon</u>'s good faith exception applies.

For the above reasons, Defendant's motion to suppress is denied.

Dated at Burlington, in the District of Vermont, this 12th day of December, 2011.

/s/William K. Sessions III____
William K. Sessions III
U.S. District Court Judge
